UNITED STATES BANKRUPTCY COURT          **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                          :
                                                :      Chapter 11
        GRUMMAN OLSON INDUS., INC.,             :      Case No. 02-16131 (SMB)
                                                :
                                Debtor.         :
-------------------------------------------------------------X
MORGAN OLSON, LLC                               :
                                                :      Adv. Pro. No. 10-3052
                                Plaintiff,      :
                                                :
                -- against --                   :
                                                :
JOHN FREDERICO and DENISE FREDERICO,            :
                                                :
                                Defendants.     :
-------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT AND DISMISSING THE COMPLAINT

**A P P E A R A N C E S :**

REGER RIZZO & DARNALL LLP
Attorneys for Plaintiff
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104

        John J. Barrett, Jr., Esq.
                Of Counsel

        -- and --

445 Hamilton Avenue, Suite 1102
White Plains, NY 10601

        Beverly M. Barr, Esq.
                Of Counsel

LAW OFFICES OF ROBERT J. McGUIRL, LLC
Attorney for Defendants
295 Spring Valley Road
Park Ridge, NJ 07656

        Robert J. McGuirl, Esq.
                Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

This case concerns the extent of <u>in personam</u> relief that a court can grant to a buyer under

Bankruptcy Code § 363(f).  Morgan Olson LLC ("Morgan") purchased the debtor's assets at a

bankruptcy sale free and clear of liens, claims and interests.  The sale order also exonerated

Morgan from certain successor liability claims.  John and Denise Frederico (the "Fredericos")

subsequently sued Morgan as the debtor's successor, contending that they were injured after the

bankruptcy sale by a product manufactured and sold by the debtor before the bankruptcy.  In

response, Morgan commenced this adversary proceeding for declaratory and injunctive relief

barring the Fredericos from proceeding against Morgan in state court, and each side moved for

summary judgment.  For the reasons that follow, the Fredericos' motion is granted, Morgan's

motion is denied, and the complaint is dismissed.

## BACKGROUND

Except as noted, the material facts are not disputed.  At all relevant times, Grumman

Olson Industries, Inc. ("Grumman" or the "Debtor") designed, manufactured and sold products

for the truck body industry that were mounted on chassis sold by Ford Motor Company and

General Motors Corporation ("GM").  On December 9, 2002, Grumman filed a chapter 11

petition in this Court.

**A.     The Sale**

On July 1, 2003, this Court entered an Order approving the sale of certain of the Debtor's

assets (the "Lot 2 Assets") to MS Truck Body Corp., a predecessor of Morgan (collectively,

"Morgan") pursuant to Bankruptcy Code §§ 363 and 365.  (<u>Order Pursuant to Sections 363 and</u>

<u>365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 (I) Approving the Sale</u>

2

by the Debtor of Certain of Its Operating Assets, Free and Clear of Liens, Claims and
Encumbrances, (II) Approving the Assumption and Assignment by the Debtor of Certain
Associated Executory Contracts and Unexpired Leases, and (III) Granting Other Related Relief,
dated July 1, 2003 ("Sale Order") (ECF Doc. # 206, filed in Case No. 02-16131).)[1]  The Sale
Order included certain provisions that bear on the present controversy, and in particular, on
Morgan's potential liability for tort claims arising after the sale from allegedly defective products
manufactured and sold by Grumman prior to the sale.  First, the Sale Order granted in rem relief;
the Lot 2 Assets were transferred free and clear of any claims against the estate.  In other words,
a creditor could not seek to collect its claim against the estate from the assets sold to Morgan:

> The sale . . . of the assets to be purchased under the Lot 2 APA (the "Lot 2
> Assets") shall be free and clear of all . . . claims . . . and other interests . . . and all
> debts arising in any way in connection with any acts of the Debtor, claims
> (including but not limited to "claims" as that term is defined in the Bankruptcy
> Code) . . . and matters of any kind and nature, whether arising prior to or
> subsequent to the commencement of this Chapter 11 case . . . (the foregoing
> collectively referred to as "Claims") . . . and holders thereof shall be permanently
> enjoined from asserting such against the Lot 2 Assets and the [sic] shall look
> solely to the proceeds of the sale.

(¶ Q; accord ¶¶ 4, 14.)

Second, the Sale Order released Morgan from in personam liability for certain claims:

> [T]he Purchaser shall have no liability or responsibility for any liability or other
> obligation of the Debtor arising under or related to the Lot 2 Assets other than for
> the purchase price payable under the Lot 2 APA.  Without limiting the effect of
> the foregoing, the transfer of the Lot 2 Assets . . . will not subject the Purchaser to
> any liability for claims against the Debtor or the Lot 2 Assets, including, but not
> limited to, claims for successor or vicarious liability, by reason of such transfer
> under the laws of the United States, any state, territory or possession thereof or
> the District of Columbia applicable to such transactions.  The Purchaser shall not
> be deemed, as a result of the consummation of the transaction contemplated by
> the Lot 2 APA to: (a) be the successor of the Debtor; (b) have, de facto or
> otherwise, merged with or into the Debtor; (c) be a mere continuation or

---

[1]    Unless otherwise noted, the ECF Doc. #s refer to entries in Adv. Proc. No. 10-3052.

substantial continuation of the Debtor or the enterprise of the Debtor; or (d) be responsible for <u>any liability of the Debtor</u> or for payment of any benefit accruing to the Debtor, except as specifically provided for in the Lot 2 APA.

(¶ 19 (emphasis added); <u>accord</u> ¶ S (purchaser shall not "be deemed to have 'successor' liability or responsibility for claims against or obligations of the Debtor arising prior to or as a result of the purchase and sale of the Lot 2 Assets hereunder").)

The Court retained jurisdiction, <u>inter alia</u>, "to interpret, implement and enforce the provisions of this Order." (<u>Sale Order</u> at ¶ 20.)

By order dated October 31, 2005, the Debtor and the Official Committee of Unsecured Creditors confirmed a joint liquidating plan. (<u>Order Confirming First Amended Joint Liquidating Chapter 11 Plan of Reorganization of Grumman Olson Industries, Inc. Proposed by the Debtor and Its Official Committee of Unsecured Creditors</u>, dated Oct. 31, 2005 (ECF Doc. # 418, filed in Case. No. 02-16131).) The Court signed the Final Order and Decree, dated Dec. 29, 2006 (ECF Doc. # 506, filed in Case. No. 02-16131),[2] and thereafter reopened the case "for the limited purpose of determining the effect of the [Sale Order] issued by the Court on the parties to the Frederico Action." (<u>Order Granting Motion to Reopen the Case Pursuant to Section 350(b) of the Bankruptcy Code and Rule 5010 of the Federal Rules of Bankruptcy Procedure for the Limited Purpose of Determining the Effect of the Sale Order on the Parties to the Frederico Action</u>, dated Mar. 18, 2010, at ¶ 2 (ECF Doc. # 518, filed in Case. No. 02-16131).)

**B.    This Adversary Proceeding**

On October 8, 2009, the Fredericos, defendants in this adversary proceeding, commenced

---

[2]    The Clerk did not close the case until October 27, 2008.

a personal injury action against Morgan and others in the Superior Court of New Jersey.

According to their Amended Complaint,[3] Ms. Frederico, a FedEx employee, sustained serious

injuries on October 15, 2008 when the FedEx truck she was driving hit a telephone pole.  The

Fredericos alleged, <u>inter alia</u>, that the FedEx truck involved in the accident was manufactured,

designed and/or sold by Grumman in 1994, (<u>see</u> <u>Amended Complaint</u> ¶ 1, at 3), and was

defective for several reasons.  (<u>Id.</u> ¶ 4, at 3.)  The Amended Complaint asserted that Morgan

continued Grumman's product line, and was, therefore, liable to the Fredericos as a successor to

Grumman under New Jersey law.  (<u>Id.</u> ¶¶ 6–11, at 3–4.)

On March 24, 2010, Morgan commenced this adversary proceeding for declaratory and

injunctive relief.  (<u>See</u> <u>Complaint in Adversary Proceeding</u>, dated March 24, 2010 ("<u>Complaint</u>")

(ECF Doc. # 1).)  Morgan alleged that the Sale Order and the accompanying Asset Purchase

Agreement exonerated it from any liability arising from products manufactured and sold prior to

the sale, including liability under state successor liability laws.  (<u>Complaint</u> at ¶ 8.)  According to

the Complaint, the truck involved in the accident was manufactured and sold by Grumman prior

to the bankruptcy sale, (<u>Complaint</u> at ¶¶ 13, 14, 17); hence, the Court should declare that §§ 363

and 365 and the Sale Order freed Morgan from successor liability and direct the Fredericos to

dismiss Morgan from the state court action.  (<u>Complaint</u> at p. 5.)

In July and August 2010, both sides moved for summary judgment.  They dispute

whether Grumman had a role in designing, manufacturing or selling the FedEx truck at issue.

(<u>Compare</u> <u>Statement of Undisputed Material Facts per Local Rule 7056-1(b) in Support of</u>

---

[3]     The Fredericos' Amended Complaint is attached as Exhibit C to the <u>Memorandum of Law in Support of Motion for Summary Judgment in Favor of Denise and John Federico</u>, dated July 29, 2010 ("<u>Federico Summary Judgment Motion</u>") (ECF Doc. # 9).

Motion for Summary Judgment in Favor of Denise Frederico and John Frederico, dated July 29,

2010, at ¶ 3 (ECF Doc. # 9) with Plaintiff's Response in Opposition to Defendant's Motion for

Summary Judgment Pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P 7056 and LBR 7056-1,

dated Aug. 24, 2010, at ¶ 3 (ECF Doc. # 14).)  The factual dispute, though critical to the question

of Morgan's potential liability, is immaterial to the resolution of the meaning of the Sale Order.

Instead, the motions present a straightforward, threshold legal question: does the Sale Order

exonerate Morgan from liability to the Fredericos?

## DISCUSSION

**A.    Jurisdiction**

The Fredericos contend that this Court lacks subject matter jurisdiction over Morgan's

adversary proceeding.  It is well-settled that a bankruptcy court retains jurisdiction to interpret

and enforce its prior orders, especially where, as here, the bankruptcy court expressly retains

jurisdiction to do so.  Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009).

Furthermore, the Court's post-confirmation jurisdiction in such circumstances extends to

disputes between non-debtors.  Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),

304 F.3d 223 (2d Cir. 2002) is directly on point.  There, Marianne, Ltd. purchased a lease from

the debtor pursuant to a bankruptcy sale order that excluded certain liabilities arising prior to the

assignment, and enjoined the lessor (Luan) from asserting any default or breach against

Marianne that was outstanding as of the closing date.  Id. at 226.  Prior to the sale, Luan had filed

a proof of claim for additional rent under an escalation clause contained in the lease.  Id.  The

sale order also provided that the bankruptcy court retained sole and exclusive jurisdiction over all

matters related to the lease, the transaction documents and the sale order.  Id.

After the consummation of the sale and confirmation of the plan, Luan sent Marianne a

letter declaring a default and demanding additional rent.  Id. at 227.  The demand sought

excluded liabilities under the sale order, the plan and the confirmation order.  Id.  In response,

Marianne filed a motion with the bankruptcy court seeking to enforce the sale order's injunction

as to excluded liabilities, and finding Luan in violation of the confirmation order for seeking to

recover the excluded liabilities.  Id.

Luan argued that the bankruptcy court lacked subject matter jurisdiction over Marianne's

motion, but the Court of Appeals disagreed.  It held that Marianne's motion was a core

proceeding for three reasons.  First, the dispute was based on rights established by the sale order,

and was uniquely affected by and inextricably intertwined with the sale order.  Second, the

bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders.

Third, the dispute involved an issue already before the bankruptcy court as part of the

consideration of Luan's administrative rent claim, which required the bankruptcy court to

construe the lease.  Id. at 229–31.  The combination of these factors rendered Marianne's motion

core.  Id. at 231.  The Court left open whether the presence of any one of these facts alone would

render the proceeding core.  Id.

Two of the Petrie factors are present in this case.  The resolution of the dispute between

Morgan and the Fredericos rests, in the first instance, on the rights created under the Sale Order.

In addition, Morgan's request for declaratory and injunctive relief asks the Court to interpret and

enforce the Sale Order by enjoining the Fredericos from proceeding with their successor liability

claims.  The presence of these two factors renders the dispute core.  NWL Holdings, Inc. v. Eden

Ctr., Inc. (In re Ames Dep't Stores, Inc.), 317 B.R. 260, 271–72 (Bankr. S.D.N.Y. 2004); see

Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millennium Seacarriers, Inc.),

458 F.3d 92, 95 (2d Cir. 2006).  The Fredericos' principal contrary authority, Zerand-Bernal

7

Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994), is inconsistent with the Supreme Court's

decision in Travelers, In re Portrait Corp. of Am., 406 B.R. 637, 641 n.4 (Bankr. S.D.N.Y.

2009); see Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co. f/k/a/ Gen. Motors

Corp.), 428 B.R. 43, 57 n.17 (S.D.N.Y. 2010), as well as the decision in Petrie.

Accordingly, the Court has subject matter jurisdiction to interpret and enforce the Sale

Order.

## B.    The Scope and Effect of the Sale Order

Section 363(f)[4] of the Bankruptcy Code authorizes the trustee in certain circumstances to

sell the estate's interest in property "free and clear of any interest in such property of an entity

other than the estate."  "Interests in property" as used in section 363(f) include "claims" that

arise from the assets being sold.  In re Chrysler LLC, 576 F.3d 108, 126 (2d Cir. 2009), granting

cert. & vacating judgment, Indiana State Police Pension Trust v. Chrysler LLC, 130 S. Ct. 1015

(2009); In re Trans World Airlines, Inc., 322 F.3d 283, 289–90 (3d Cir. 2003).  Although §

363(f) is not limited to in rem interests in property, it affords only in rem relief similar to 11

---

[4]        Section 363(f) states:

   The trustee may sell property under subsection (b) or (c) of this section free and clear of any
   interest in such property of an entity other than the estate, only if—

      (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

      (2) such entity consents;

      (3) such interest is a lien and the price at which such property is to be sold is greater than the
      aggregate value of all liens on such property;

      (4) such interest is in bona fide dispute; or

      (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money
      satisfaction of such interest.

U.S.C. § 1141(c).[5]  See Chrysler LLC, 576 F.3d at 125–26.  By its terms, § 363(f) cleanses the

transferred assets of any attendant liabilities, and allows the buyer to acquire them without fear

that an estate creditor can enforce its claim against those assets.

In addition, § 363(f) has been interpreted to authorize the bankruptcy court to grant in

personam relief, similar to the discharge under Bankruptcy Code § 1141(d), that exonerates the

buyer from successor liability, including liability for tort claims.  Motors Liquidation, 428 B.R.

at 57–59.  Extending the "free and clear" provisions in this manner serves two important

bankruptcy policies.  First, it preserves the priority scheme of the Bankruptcy Code and the

principle of equality of distribution by preventing a plaintiff from asserting in personam

successor liability against the buyer while leaving other creditors to satisfy their claims from the

proceeds of the asset sale.  Douglas v. Stamco, 363 F. App'x 100, 102 (2d Cir. 2010); Trans

World Airlines, 322 F.3d at 292.  Second, it maximizes the value of the assets that are sold.

Douglas, 363 F. App'x at 102–03 ("[T]o the extent that the 'free and clear' nature of the sale (as

provided for in the Asset Purchase Agreement ('APA') and § 363(f)) was a crucial inducement

in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort

claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to

maximize the value of the assets and thereby maximize potential recovery to the creditors.")

(footnote omitted).

---

[5]       Section 1141 (c) states:

   Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise
   provided in the plan or in the order confirming the plan, after confirmation of a plan, the property
   dealt with by the plan is free and clear of all claims and interests of creditors, equity security
   holders, and of general partners in the debtor.

The in rem relief granted under the Sale Order is immaterial to the current dispute.  The

Fredericos are not attempting to collect their claim by liquidating the Lot 2 Assets; they are

seeking in personam relief against Morgan.  Nevertheless, the Sale Order also includes several

provisions, quoted above, that limit Morgan's in personam successor liability.  The Sale Order

freed Morgan from successor liability for claims against the Debtor "arising prior to or as a result

of the purchase and sale of the Lot 2 Assets."  (¶ S.)  It provided that transfer of the Lot 2 Assets

did not subject Morgan to any liability for claims against the Debtor "arising under or related to

the Lot 2 Assets," including claims for successor liability under non-bankruptcy law, "by reason

of such transfer."  (¶ 19.)  Finally, Morgan would not be deemed to be a successor of the Debtor

or be responsible for "any liability of the Debtor" as a result of the consummation of the sale.

(Id.)

Certain of these limitations on Morgan's successor liability clearly do not apply.  The

Fredericos' claims do not arise from or relate to the Lot 2 Assets.  As Morgan concedes, the

truck involved in the accident was not included as part of the sale.  (Complaint at ¶ 13 ("The

truck alleged to have been defective was actually manufactured and sold by Debtor prior to the

asset sale in this Bankruptcy proceeding, and not by Morgan.").)  Furthermore, the Fredericos are

not basing their claims on the transfer of the Lot 2 Assets or the consummation of the sale

transaction.  If Morgan had immediately resold the Lot 2 Assets to a third party, the Fredericos

would not be suing Morgan in state court.

Instead, the Fredericos are basing their claims on what Morgan did after the sale.

According to their state court Amended Complaint, Morgan is liable as a successor under New

Jersey law because it "continued the product line since the purchase," "traded upon and benefited

from the goodwill of the product line," "held itself out to potential customers as continuing to

10

manufacture the same product line of Grumman trucks" and "has continued to market the instant

product line of trucks to Federal Express."  (<u>Frederico Summary Judgment Motion</u>, Ex. C, at ¶¶

7, 9–11.)  The Sale Order did not give Morgan a free pass on future conduct, and the suggestion

that it could is doubtful.  <u>See</u> <u>Schwinn Cycling & Fitness Inc. v. Benois</u>, 217 B.R. 790, 796–97

(N.D. Ill. 1997) (sale order "was not intended to, nor could it, preempt all possible future

successor liability claims").

## C.   Did the Fredericos hold a "Claim"?

The more difficult question is whether the Fredericos' current claim was a liability of the

Debtor arising "prior to . . . the purchase and sale of the Lot 2 Assets" within the meaning of the

Sale Order.  (¶ S.)  Bankruptcy Code § 101(5)(A) defines "claim" to mean a "right to payment,

whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  Congress

selected the broadest possible definition to ensure that "all legal obligations of the debtor, no

matter how remote or contingent, will be able to be dealt with in the bankruptcy case."  <u>United

States v. LTV Corp. (In re Chateaugay Corp.)</u>, 944 F.2d 997, 1003 (2d Cir. 1991) (quoting H.R.

Rep. No. 95-595 at 309 (1978)); <u>accord</u> <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 83 (1991)

("Congress intended by this language to adopt the broadest available definition of 'claim.'");

<u>Pennsylvania Dept. of Public Welfare v.</u> Davenport, 495 U.S. 552, 558 (1990) ("[T]o the extent

the phrase 'right to payment' is modified in the statute, the modifying language ('whether or not

such right is . . .') reflects Congress' broad rather than restrictive view of the class of obligations

that qualify as a 'claim' giving rise to a 'debt.'") (citing H.R. Rep. No. 95-595 at 309); <u>Ohio v.

Kovacs</u>, 469 U.S. 274, 279 (1985) ("[I]t is apparent that Congress desired a broad definition of

'claim.'") (citing H.R. Rep. No. 95-595 at 309).

Despite its breadth, the term "claim" has its limits, particularly in the area of future tort claims. Initially, there are two types of future tort claims. The first category includes those who had pre-petition physical contact with or exposure to the debtor's product but have not yet manifested symptoms or discovered their injury. Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.), 198 B.R. 519, 530 (Bankr. N.D. Ill.), remanded on other grounds, No. 96 C 5447, 1996 WL 556736 (N.D. Ill. 1996). These victims commonly include persons exposed to asbestos, In re Quigley Co., 383 B.R. 19, 27 (Bankr. S.D.N.Y. 2008) ("If the Asbestos PI Claimant was exposed to asbestos before the Quigley petition date, he or she holds a 'claim' . . . [and] the claimant's status in bankruptcy does not depend on the manifestation of the injury."), or the insertion of an intrauterine device, e.g., Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 202–03 (4th Cir. 1988) ("Mrs. Grady's claim . . . is undoubtedly 'contingent.' It depends upon a future uncertain event, that event being the manifestation of injury from use of the Dalkon Shield. We do not believe that there must be a right to the immediate payment . . . when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition, to constitute a claim under § 362(a)(1)."), or breast implants. In re Dow Corning Corp., 211 B.R. 545, 598 n.55 (Bankr. E.D. Mich. 1997) (referring to earlier ruling denying a motion to appoint a legal representative for future claimants because the debtor no longer manufactured silicone-gel breast implants and "any person who has received a silicone-gel breast implant manufactured by the Debtor or from components supplied by the Debtor, has already suffered an injury and is therefore a present, as opposed to a future claimant"). Although the claimants, particularly in asbestos cases, may not be identifiable during the bankruptcy case or aware of the pre-petition exposure to the debtor's product or the fact of their injury, courts have dealt with due process concerns caused by the discharge of their claims through the appointment of a future claims

12

representative to protect their interests and the creation of a trust to pay their claims.  See In re

Grossman's Inc., 607 F.3d 114, 126 (3d Cir. 2010) (en banc).  Section 524(g) codifies these

requirements in bankruptcy cases involving asbestos liability.

The second category of future tort claims consists of victims who are injured after

consummation of an asset sale or confirmation of a plan as a result of a defective product

manufactured and sold by the debtor prior to the bankruptcy.  The Fredericos fall into this

category.  Dealing with this second category of future claims in a bankruptcy case raises a host

of practical and constitutional issues as illustrated by the following hypothetical suggested by the

Second Circuit in Chateaugay:

> Consider, for example, a company that builds bridges around the world.  It can
> estimate that of 10,000 bridges it builds, one will fail, causing 10 deaths.  Having
> built 10,000 bridges, it becomes insolvent and files a petition in bankruptcy.  Is
> there a "claim" on behalf of the 10 people who will be killed when they drive
> across the one bridge that will fail someday in the future?  If the only test is
> whether the ultimate right to payment will arise out of the debtor's pre-petition
> conduct, the future victims have a "claim."  Yet it must be obvious that enormous
> practical and perhaps constitutional problems would arise from recognition of
> such a claim.  The potential victims are not only unidentified, but there is no way
> to identify them.  Sheer fortuity will determine who will be on that one bridge
> when it crashes.  What notice is to be given to these potential "claimants"?  Or
> would it suffice to designate a representative for future victims and authorize the
> representative to negotiate terms of a binding reorganization plan?

Chateaugay, 944 F.2d at 1003.

Chateaugay, which involved environmental claims rather than tort claims, adopted a "fair

contemplation" test to distinguish between contingent or unmatured claims, which are "claims"

within the meaning of § 101(5), and potential future tort claims, which are not.  Under that test, a

contingent or unmatured obligation is a "claim" if the occurrence of the contingency or future

event that would trigger liability was "'within the actual or presumed contemplation of the

parties at the time the original relationship between the parties was created.'"  Chateaugay, 944

13

F.2d at 1004 (quoting In re All Media Props., Inc., 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980),

aff'd mem., 646 F.2d 193 (5th Cir. 1981)).  The Court acknowledged that the concepts of

"maturity" and "contingency" were not readily transferable to future tort claims whose victims

are "totally unaware of injury and a tortfeasor."  Id. at 1005.

    In Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft, Corp.), 58

F.3d 1573 (11th Cir. 1995) ("Piper"), the Court adopted and applied a modified version of the

Chateaugay "contemplation" test to potential future tort claims of the type asserted by the

Fredericos.  See Grossman's, 607 F.3d at 124.  Piper had manufactured aircraft and spare parts

for over fifty years before it filed for chapter 11, and between 50,000 and 60,000 Piper aircraft

were still operational in the United States.  Piper, 58 F.3d at 1575.  During the chapter 11, Piper

entered into a letter of intent to sell its assets under a plan.  Id.  The letter of intent required Piper

to seek the appointment of someone to represent the interests of future claimants by arranging

the establishment of a fund from the sale proceeds to pay future products liability claims.  Id.

    The bankruptcy court appointed Professor David Epstein as the legal representative for

future claimants who would suffer wrongful death, personal injury and property damage post-

confirmation caused by aircraft or parts manufactured, sold, designed, distributed or supported

prior to the confirmation date.[6]  Id.  Epstein subsequently filed a $100 million proof of claim

based on statistical assumptions regarding the likely number of such claims.  Id.  The Creditors'

Committee, and later the debtor, objected to Epstein's claim on the ground that the future

claimants did not hold claims within the meaning of 11 U.S.C. § 101(5).  Id.

---

[6]     The order appointing Epstein made no determination whether the future claimants held claims.  Piper, 58
F.3d at 1575.

The bankruptcy court explored the various theories that courts had adopted to decide whether tort victims held claims: the accrued state law claim test,[7] the conduct test and the pre-petition relationship test.[8]  In re Piper Aircraft Corp., 162 B.R. 619, 624–27 (Bankr. S.D. Fla. 1994).  Reflecting on the Chateaugay hypothetical, it observed:

> The problem posed by this hypothetical has become reality here.  We know that some planes in the existing fleet of Piper aircraft will crash, and we know that there may be injuries, deaths and property damage as a result.  We also know that under theories of negligence and products liability, Piper, if it remains in existence, would be liable for some of these damages.  Even so, there is no way to identify who the victims will be or to identify any particular prepetition contact, exposure, impact, privity or other relationship between Piper and these potential claimants that will give rise to these future damages.

Id. at 627.

The bankruptcy court sustained the objection to Epstein's claim, and the district court and the Eleventh Circuit affirmed.  The Court of Appeals adopted a two part test—the "Piper" test—that combined the conduct and pre-petition relationship tests to determine whether a tort victim holds a "claim":

> [A]n individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product.  The debtor's prepetition

---

[7]    The accrued state law claim or right to payment test was adopted by the Third Circuit in Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332 (3d Cir. 1985).  Following twenty-five years of uniform criticism that Frenville defined "claim" too narrowly, the Third Circuit overruled Frenville and held that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code."  Grossman's, 607 F.3d at 125.  This is essentially the same test adopted in Piper and discussed in the succeeding text.

[8]    Under the conduct test, "a right to payment arises when the conduct giving rise to the alleged liability occurred."  Piper Aircraft, 162 B.R. at 624; accord Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1275 (5th Cir. 1994); In re Huffy Corp., 424 B.R. 295, 304 (Bankr. S.D. Ohio 2010).  In other words, "all of the acts constituting the tort other than the manifestation of injury had occurred prior to the petition date."  Piper Aircraft, 162 B.R. at 624.  Under the pre-petition relationship test, only individuals with "some type of prepetition relationship with the Debtor" hold claims.  Id. at 626; Lemelle, 18 F.3d at 1276; Huffy, 424 B.R. at 304.

conduct gives rise to a claim to be administered in a case only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct.

Piper, 58 F.3d at 1577 (footnote omitted).

The Fredericos' right to payment fails to meet the Piper test and falls squarely within the Chateaugay hypothetical.  It represents "the extreme case of pre-petition conduct that has not yet resulted in any tortious consequence to a victim."  Chateaugay, 944 F.2d at 1004.  The Fredericos had no "contact" with Grumman prior to the accident.  They did not deal with Grumman and Ms. Frederico's only connection was that her employer purchased the truck and she drove it.[9]  Hence, they did not hold claims against the Grumman estate at the time of the bankruptcy sale.  Cf. Pettibone Corp. v. Ramirez (In re Pettibone Corp.), 90 B.R. 918, 932 (Bankr. N.D. Ill. 1988) (automatic stay did not apply to suit by party injured post-petition by a forklift the debtor had manufactured and delivered to party's employer pre-petition because "where the claimant is only exposed to and injured by the debtor's product post-petition he has no existing claim as of the petition date; in that case the claim can arise only post-petition").

Equally important, the Fredericos did not receive adequate notice of the bankruptcy.  To satisfy due process, a party seeking relief must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  The Bankruptcy Code requires the trustee or debtor in possession to

---

[9]      I am not suggesting that someone who buys a defective product pre-petition but is not injured until after the bankruptcy has a pre-petition claim for his or her personal injury.  For example, there are many GM cars currently on the road that were manufactured and sold prior to GM's 2009 bankruptcy sale.  Statistically, some will be involved in future accidents resulting in serious personal injury or death to the owner.  The owners do not have "claims" in the GM case for injury or death that may or may not occur years from now.  See Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000) (Posner, C.J.).  A fortiori, the injured pedestrians who never dealt with GM do not hold claims.  See id.

16

provide parties in interest with adequate notice and an opportunity to be heard before their interests may be adversely affected.  Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 720 (1st Cir. 1994).  Moreover, § 363(b) requires notice and a hearing before assets can be sold outside of the ordinary course of business.  A sale order under § 363(f) that purports to free a purchaser from the debtor's liabilities does not bind parties in interest that did not receive appropriate notice of the sale.  Id. at 721; cf. Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 600 F.3d 135, 158 (2d Cir. 2010) (party who was not adequately represented in bankruptcy and did not receive adequate notice of the proceedings leading to orders that exonerated third parties from in personam liability was not bound by those orders), cert. denied sub nom., Travelers Indem. Co. v. Chubb Indem. Ins. Co., 131 S. Ct. 644 (2010).

The Fredericos could not have been identified as potential creditors prior to the sale or received adequate notice of the case, the sale, the confirmation or the deadline for filing a proof of claim.  Even if the Fredericos knew about the case, the knowledge would be meaningless and there would be nothing for them to do.  They could not file a claim based on an accident that occurred years later.  In addition, the Fredericos' rights were not protected through the appointment of a future claims representative and the creation of a trust to pay their claims.  While such protective measures do not necessarily transform a non-"claim" into a "claim," see Kewanee Boiler, 198 B.R. at 540 ("In all cases found where a trust was created out of which future claims against the estate were to be paid, some assertedly injurious contact between the future victim and the product occurred pre-petition.  Only the manifestation of a disease was lacking."), the absence of these protective measures exacerbates the evident unfairness that results from treating their rights as "claims" under the Sale Order.

17

Accordingly, the Court concludes that the Sale Order does not affect their rights to sue

Morgan.  Except for <u>Chrysler</u>, which is discussed below, every case that we have found

addressing this issue has concluded for reasons of practicality or due process, or both, that a

person injured after the sale (or confirmation) by a defective product manufactured and sold prior

to the bankruptcy does not hold a "claim" in the bankruptcy case and is not affected by either the

§ 363(f) sale order or the discharge under 11 U.S.C. § 1141(d).  <u>E.g.</u>, <u>Piper</u>, 58 F.3d at 1577

(discussed <u>supra</u>); <u>Lemelle</u>, 18 F.3d at 1277 (definition of "claims" cannot be extended to cover

future tort claimants who "were completely unknown and unidentified at the time [the debtor]

filed its petition and whose rights depended entirely on the fortuity of future occurrences");

<u>Schwinn Bicycle</u>, 217 B.R. at 797 (due process prevented discharge of claim against purchaser

of debtor's assets arising from post-sale, post-confirmation injury because claimants "had no

notice, and no reason at the time, to present an interest in the bankruptcy proceedings or to take

action in response to the threatened deprivation of their rights"); <u>Taylor v. Strongbuilt Int'l, Inc.

(In re Strongbuilt, Inc.)</u>, No. 03-31317, 2009 WL 5873047, at *3 (Bankr. W.D. La. Aug. 26,

2009) (plan did not discharge claim against debtor's successor for post-confirmation injury

caused by product the debtor manufactured pre-petition because "[t]o hold otherwise, would be

to require the plaintiffs to presume an accident and estimate the cost of the damages of an injury

that had not yet occurred and to have filed that claim"); <u>White v. Chance Indus., Inc. (In re

Chance Indus., Inc.)</u>, 367 B.R. 689, 709 (Bankr. D. Kan. 2006) (confirmation discharge did not

affect rights of party injured post-confirmation on amusement park ride manufactured by the

debtor pre-petition where debtor failed to give any notice of its intent to discharge future claims

and failed to provide for a future claims representative or establish a fund to pay their claims); <u>In

re Hoffinger Indus., Inc.</u>, 307 B.R. 112, 114, 122 (Bankr. E.D. Ark. 2004) (declining to estimate

claims of people who will suffer future injuries resulting from swimming pools and associated products manufactured by the debtor pre-petition because "[t]he post confirmation person unknown, unborn, or about to take their first swimming lesson simply does not have a logical prepetition nexus to Hoffinger's products. Due process demands more . . ."); Kewanee Boiler, 198 B.R. at 540–41 (party injured in post-confirmation boiler room accident as a result of alleged defects in a boiler manufactured by the debtor pre-petition was not bound by discharge because he did not have a "right to payment," but even if he did, persons who might be injured in the future "could not be identified with enough specificity to allow them to be notified," the "[d]ischarge of their future claims would violate the Fifth Amendment because of fairness and due process concerns and would also violate bankruptcy notice requirements," and the debtor did not seek the appointment of a future tort claimants representative or establish a fund to pay their claims); see generally Laura B. Bartell, Due Process for the Unknown Future Claim in Bankruptcy—Is this Notice Really Necessary?, 78 Am. Bankr. L.J. 339 (2004).

Morgan misplaces its reliance on Chrysler and General Motors as examples of the rule that "a Bankruptcy Court may craft a Rule 363 Order that permits assets to pass to a purchaser free and clear of successor liability claims."  (Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056 and LBR 7056-1, dated July 14, 2010, at 5 (ECF Doc. # 6).)  As noted, § 363(f) authorizes the Court to absolve the buyer of in personam liability for pre-confirmation claims in a chapter 11 case.  The rule does not extend to potential future tort claims of the type now asserted by the Fredericos, and the GM sale order did not grant the buyer this relief.  To the contrary, the buyer in GM assumed "all product liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction,

regardless of when the product was purchased." In re Gen. Motors Corp., 407 B.R. 463, 482

(Bankr. S.D.N.Y. 2009) (emphasis in original), aff'd sub nom., Campbell v. Motors Liquidation

Co. (In re Motors Liquidation Co. f/k/a/ Gen. Motors Corp.), 428 B.R. 43 (S.D.N.Y. 2010).

Further, although the Chrysler sale order purported to extinguish the buyer's liability for

potential future tort claims, the Second Circuit questioned its reach. Chrysler, 576 F.3d at 127

("[W]e decline to delineate the scope of the bankruptcy court's authority to extinguish future

claims, until such time as we are presented with an actual claim for an injury that is caused by

Old Chrysler, that occurs after the Sale, and that is cognizable under state successor liability

law.").[10]

## F.     Successor Liability Under New Jersey Law

The sole relief sought in the Complaint was a declaration that the relevant provisions of

the Bankruptcy Code and the Sale Order absolved Morgan of successor liability and an order

directing the Fredericos to dismiss Morgan from their state court action. Having concluded that

---

[10]     Douglas v. Stamco presents a fact pattern much closer to the Fredericos' situation. There, the affiliated
debtors sold their assets to Genesis Worldwide II, Inc. ("Genesis"), free and clear of all liens and claims, other than
permitted liens and assumed liabilities. (Order (A) Authorizing Sale of Substantially All of the Debtor's Assets Free
and Clear [etc.], dated Nov. 16, 2001 ("Genesis Order"), at ¶ 6) (Douglas v. Stamco, 6:08 Cv. 747 (N.D.N.Y.), ECF
Doc. # 6, Ex. B).) In addition, the Genesis Order, at ¶ 14, provided that the purchaser would not be liable for any
liabilities of the debtors "now existing or hereafter arising." The plaintiff was injured approximately four years later
while working with a machine allegedly manufactured and sold by one of the affiliated debtors. (Douglas v.
Stamco, 6:08 Cv. 747 (N.D.N.Y.), ECF Doc. # 1, Ex. A, at ¶¶ 8–9.) Genesis moved to dismiss, relying on the
exoneration provisions of the Genesis Order. (See Douglas v. Stamco, 6:08 Cv. 747 (N.D.N.Y.), ECF Doc. # 6, Ex.
Attachment 5.) The plaintiff filed a six page response, primarily arguing that Genesis was a successor under New
York state law. (See Douglas v. Stamco, 6:08 Cv. 747 (N.D.N.Y.), ECF Doc. # 13.) He devoted one paragraph to
the Genesis Order, arguing that under New York law, the Genesis Order could not apportion liability and thereby
affect the rights of a non-party. (Id. at 4.) In addition, New York law did not permit a sale free and clear of
successor liability claims. (Id.) The District Court dismissed the complaint from the bench, and the Second Circuit
affirmed.

The plaintiff in Douglas v. Stamco did not argue, as the Fredericos do, that he did not have a "claim" or that
cutting off his rights denied him due process of law. Given the failure to raise these arguments and the caution
expressed by the Second Circuit in Chrysler, Douglas v. Stamco cannot be read to support Morgan's overarching
argument that a sale order under § 363(f) can exonerate a purchaser from in personam liability for future torts where
the future victim had no meaningful opportunity to participate in the bankruptcy or prosecute his claim.

the Fredericos' claim is not affected by the Sale Order and that injunctive relief is, therefore, inappropriate, the Court has exhausted its post-confirmation jurisdiction. See Petrie, 304 F.3d at 231 ("[T]he bankruptcy court's core jurisdiction over the dispute between Luan and Marianne is limited to the enforcement of the rights established by the orders of the bankruptcy court and the resolution of issues raised in the reorganization."). The Court expresses no view on whether Morgan is liable to the Fredericos under state law, and leaves the question to the state courts.

**G.      Conclusion**

The Fredericos' cross-motion for summary judgment is granted and Morgan's motion for summary judgment is denied. The Clerk of the Court is directed to enter a judgment dismissing the Complaint.

So ordered.

Dated: New York, New York
        February 25, 2011

                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Court

21